UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TOMMY LEE CLARK,                           )
                                           )
                Petitioner,                )
                                           )
v.                                         )          No. 12-01009-JDB-egb
                                           )
HENRY STEWARD,                             )
                                           )
                Respondent.                )

---

ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254

---

On January 9, 2012, Petitioner, Tommy Lee Clark, Tennessee Department of Correction
prisoner number 107765, an inmate at the Northwest Correctional Complex ("NCCX") in
Tiptonville, Tennessee, filed a *pro se* petition pursuant to 28 U.S.C. § 2254 (the "Petition")
(Docket Entry ("D.E.") 1) and paid the filing fee. (D.E. 3.) The Court issued an order on May
7, 2012, directing Respondent, Henry Steward, Warden of NCCX, to file a response to the
Petition (D.E. 5), which he did on July 30, 2012, along with the state-court record. (D.E. 11, 12.)
Clark filed an amended Petition, exhaustion report, and a motion for transcripts on November 19,
2012. (D.E. 15.) Respondent filed a notice of supplemental filing along with his answer to the
amended Petition on February 5, 2013. For the following reasons, Clark's Petition is DENIED.

I.      STATE COURT PROCEDURAL HISTORY

On April 17, 2007, following a jury trial in the Circuit Court for Madison County,
Tennessee, Clark was convicted of aggravated burglary, attempted aggravated burglary, and
possession of a deadly weapon. On the same day, he was sentenced to fifteen years, twelve

1

years, and six years, respectively, with each term to run consecutively, for an effective sentence of thirty-three years. The Tennessee Court of Criminal Appeals ("TCCA") affirmed. *State v. Clark*, No. W2007-01829-CCA-R3-CD, 2008 WL 3342992 (Tenn. Crim. App. Aug. 11, 2008), *perm. app. denied* (Tenn. Jan. 20, 2009). (D.E. 12-11.)

On June 25, 2007, Petitioner filed a *pro se* petition pursuant to the Tennessee Post-Conviction Procedure Act, Tennessee Code Annotated §§ 40-30-101 to -124, in the Madison County Circuit Court. (D.E. 12-17 at 2.) Because his direct appeal was still pending, Clark was allowed to withdraw his petition without prejudice and refiled it on April 7, 2009. (*Id.* at 3.) After being appointed counsel, Petitioner filed an amended petition. (*Id.*) The post-conviction court held an evidentiary hearing on July 9, 2009, and, at the conclusion of the hearing, orally denied the petition. (*Id.* at 3-4.) A written order containing the findings of fact and conclusions of law was entered on July 16, 2009. (*Id.* at 4) The TCCA affirmed. *Clark v. State*, No. W2009-01613-CCA-R3-PC, 2010 WL 1610532 (Tenn. Crim. App. Apr. 21, 2010), *perm. app. denied* (Tenn. Aug. 25, 2010). (D.E. 12-17 at 5.)

On September 21, 2009, the trial court amended Clark's status from a persistent offender to a career offender on his aggravated burglary conviction, causing an increase in his required time served before being parole eligible. (D.E. 12-26 at 2.) Petitioner submitted a "Motion to Reopen, or in the Alternative, Petition for Relief from Conviction or Sentence," arguing that the trial court lacked jurisdiction to amend the sentence. (*Id.*) The trial court denied the motion and also addressed the motion as a habeas corpus petition, denying relief. (*Id.*) The TCCA denied permission to appeal. *Clark v. State*, No. W2010-01278-CCA-R28-PC, (Tenn. Crim. App. Nov. 23, 2010) (D.E. 12-26 at 2). (*Id.*) Subsequently, Clark filed a petition for habeas corpus in the Circuit Court of Lake County, Tennessee, presenting the same jurisdictional argument. (*Id.* at 3.)

2

The circuit court dismissed his petition, and the TCCA affirmed. *Clark v. State*, No. W-2011-00463-CCA-R3-HC, 2011 WL 2650765 (Tenn. Crim. App. July 7, 2011). (D.E. 12-26 at 2.)

On December 12, 2011, Petitioner filed a petition for a writ of certiorari in the Madison County Circuit Court. (D.E. 21-4 at 2.) The court denied Clark's petition, and the TCCA affirmed the judgment of the lower court. *Clark v. State*, W2012-00773-CCA-R3-CO (Tenn. Crim. App. Nov. 5, 2012). (D.E. 21-4 at 2.)

The facts underlying Petitioner's conviction are set forth in the opinion of the TCCA on direct appeal:

*FACTS*

State's Proof

Scott Long testified that he had lived on Campbell Street in Jackson for about ten years. At around 9:30 p.m. on June 23, 2006, Long was sitting in his backyard when he heard glass break. He then observed the defendant, who was wearing a white hat, orange shirt, and blue jeans, walking across a parking lot adjacent to his house. He walked around to the front of his house and called the police. He testified that the defendant was standing in front of the house across the street, acting "irate" and "belligerent." Long then spoke with Steve Russell, who lived across the street, and learned that Russell's front window had been broken. When the police arrived, Long spoke with Officer David Knolton, then checked on another neighbor. On cross-examination, Long testified that he did not see the window break but only heard glass breaking. He acknowledged that he had drunk "about two or three" beers that night.

Steve Russell testified that he had lived in a duplex on Campbell Street since 1985. At around 9:30 p.m. on June 23, 2006, he was in his kitchen when he heard a loud noise, "like somebody bounced a basketball off the wall on my neighbor's side of the house." He then heard someone "hollering and screaming," although he could not understand what was being said. He returned to the front of his apartment and noticed that his curtains were over his desk, as though someone had reached inside. He went outside and encountered Long, who asked if his window had been broken. On cross-examination, Russell testified that he found nothing missing from his apartment that night. He said two window panes and part of the window frame were broken.

Joseph Martinez testified that he lived on Campbell Street with his fiancée, ten-year-old stepdaughter, and fourteen-month-old daughter. At around 9:30 p.m. on June 23, 2006, he was watching a movie in his bedroom with his fiancée when one of his dogs

began making noise. Five to ten seconds later, he heard "a big crash" in the front of the house. He ran to the front door, looked out, and saw the defendant run across his yard, turn around, and run the other direction. Shortly thereafter he heard a second crash coming from his stepdaughter's bedroom.[] He went to the bedroom and found the defendant with his hands and head inside the window. The defendant was bleeding and holding a box cutter. Martinez kicked at the defendant and told him he was going to get his firearm. When he returned, the defendant was gone. On cross-examination, Martinez testified that he could not recall whether the box cutter's blade was extended. He stated that no items were missing from his stepdaughter's room.

Jackson Police Officer David Knolton testified that he responded to a possible break-in on Campbell Street on June 23, 2006. When he arrived, he observed a broken window pane at Russell's apartment. While speaking with Long and Russell, he heard "[a] lot of yelling" coming from down the street. He approached on foot and found Martinez and the defendant confronting one another. The defendant was standing next to a blue truck, and Officer Knolton saw him attempt to hide behind the truck as Officer Brian Turner drove by in his patrol car. The defendant told Martinez, who was carrying a firearm, "Hey, I'm sorry, man. I'm sorry. I'm sorry." Officer Knolton then identified himself as a police officer and took the defendant into custody. He testified that the defendant was bleeding "pretty profusely" from his forearm.

Jackson Police Officer Brian Turner testified that he responded to an attempted burglary call on Campbell Street on June 23, 2006. When he arrived, Officer Knolton told him that he had heard a disturbance farther down the street, so he drove north in his patrol car as Officer Knolton approached on foot. As he drove down the street, he received a call that someone was attempting to enter Martinez'[s] house. Officer Knolton then radioed that he had the defendant detained in front of Martinez'[s] house. Officer Turner testified that he found a red box cutter with the blade open next to the blue truck.

Defense Proof

Cammie Neal, a physician's assistant at Jackson-Madison County General Hospital, testified that she treated the defendant on June 23, 2006, for three lacerations on his left forearm. She said she did not observe any shot or pellet wounds on the defendant. On cross-examination, Neal testified that the defendant's toxicology report revealed the presence of alcohol and cocaine in his blood.

The defendant testified that he dropped off his cousin on Campbell Street on June 23, 2006. He then went to visit a friend, Terry Hardin, who had been sick. He said that he eventually ran from Hardin's house on foot because "[d]ude was shooting at me." He explained his actions after fleeing Hardin's house:

[Defense Counsel]: You were being shot at?

[Defendant]: Yeah, I know I fell down. But anyway, I fell down. I got up. I was hollering going down the street, so one man come [sic] to the window, you know. He wouldn't come out, so-and, you know, I run around his house and run back in front. I was hollering. I couldn't get nobody. So then I took a run and I jumped in the pin [sic] with a great big old dog that was on a chain. So I run back around front. So I went back up that way where I just had left 'cause there was some peoples coming from the back, and that's when I kicked out a window. I didn't knock it out, I kicked it out.

The defendant said that he kicked out the window to get help, not to gain access to the house. He acknowledged kicking in a second window after not receiving help at the first house but said that he did not take anything from either house. He further acknowledged that he was carrying a box cutter but said it was in his pocket. Asked about Martinez'[s] testimony that the box cutter was in his hand, the defendant said, "Mr. Martinez is lying." He testified that he did not intend to use the box cutter to break into Russell's or Martinez'[s] house.

On cross-examination, the defendant denied using cocaine that night. He testified that he did not know who attacked him at Hardin's house or why he was attacked. He stated that he did not know whether he was shot that night. He testified that he ran through the parking lot next to Long's house and that Long's testimony that he was walking through the parking lot was a lie. He denied attempting to enter Martinez'[s] house through the window and again asserted that Martinez'[s] testimony was false. He further denied that he hid behind the blue truck when Officer Turner drove by and asserted that Officer Knolton's testimony on this point was false.

Following deliberations, the jury found the defendant guilty of aggravated burglary, attempted aggravated burglary, and possession of a deadly weapon other than a firearm with the intent to employ it during the commission of a dangerous offense.

Sentencing Hearing

At the sentencing hearing, Steve Russell testified that it took him between eight and ten hours to repair his windows. He said he paid for the materials, but his landlord reimbursed him $80 for his labor. He testified that the offense had not affected his ability to enjoy his time at home. Regarding the appropriate punishment for the defendant, he stated "I'm here to see justice done to the maximum."

Joseph Martinez testified that the burglary had made his ability to enjoy his home "very uncomfortable" and that his home was on "high alert." He stated that his stepdaughter frequently woke him and his wife[] during the night, worried that someone was trying to break into the house. He said his wife had also had "a lot of restless nights because of it." He stated that his family was very scared to continue living in the house. He testified that the defendant bled onto some stuffed dolls and clothing which he had to discard. He estimated the value of these items at about $50. Martinez testified that it took him about four and a half hours to board up his stepdaughter's windows and replace

his broken storm door.  Asked about punishment, Martinez stated, "I would like to see the full extent of the law."

Bruce Ingram of the Tennessee Board of Probation and Parole testified that he compiled the defendant's presentence report.  The State introduced the presentence report as an exhibit to the proceedings.  The State also introduced as exhibits certified copies of judgments against the defendant for five counts of assault, vandalism, failure to appear, six counts of public intoxication, driving while unlicensed, second offense driving on a revoked license, three counts of driving on a suspended license, driving under the influence, two counts of misdemeanor theft of property, two counts of third degree burglary, armed robbery, first degree burglary, two counts of petit larceny, temporary use of a motor vehicle without the owner's consent, possession of a deadly weapon, passing a forged check under $100, attempt to commit a felony, and receiving and concealing stolen property.

In sentencing the defendant, the trial court stated:

Thank you both.  I've known [the defendant] a long time.  I've seen him try his own cases before, stand up and argue his case and present it to the finder of fact before.

I remember the specifics of this case very well.  [The defendant] testified, if I'm remembering correctly, at the trial and gave his position on what actually happened, in his opinion.

There being no real dispute, and I've reviewed [the defendant's] record again, a large portion of which I was familiar with from past experience, but in reviewing the record, it's clear that as to Count 1, the attempted aggravated burglary, he would be a[c]areer [o]ffender.  The mandatory sentence that's set forth under the law is 12 years.  His release eligibility on that sentence is at 60 percent.  Again, release eligibility, as [the defendant] knows, is when you're first eligible for release but it's not an automatic release time.  The fine imposed by the jury in this case was a $5,000 fine, and I'll let that stand for now.  I don't know what possibility realistically it will ever be paid back, [sic] but we'll let it stand along with costs.

As to Count 2, the aggravated burglary, that would be a Range III.  Considering the enhancement factors argued by the State and not finding any mitigating factors, although defense counsel did file some asking the Court to consider, the Court feels that the maximum sentence of 15 years would be the appropriate sentence in this case.  [The defendant] has shown his inability to conform to the law and obey the law, repeated offender.  That would be as a Range III.  That is the 45 percent release eligibility.

. . . .

And that fine imposed was a $10,000 fine which the jury assessed and I will allow to stand.

And then as to Count 3, again the Court finds based upon the record presented by the State that this is a[c]areer [o]ffender situation, that being a conviction for possession of a weapon with intent to employ in the commission of a felony. The mandatory sentence under the law is a 6-year sentence. Again a 60 percent release eligibility. And the fine imposed was a $3,000 fine by the jury which I will allow to stand.

In considering the argument of consecutive versus concurrent, certainly again because of the repeated conduct of this Defendant and his failure to conform to the laws, he keeps coming back and coming back, the record speaks for itself, it appears that it would be appropriate to order that it be consecutive sentencing in this case. . . . I'll run each of the three counts consecutive with each other under these circumstances.

*Clark*, 2008 WL 3342992, at *1-4. (D.E. 12-11 at 2-5.)

## II. PETITIONER'S FEDERAL HABEAS CLAIMS

In his Petition, Clark raises the following issues:

1. Whether the evidence was sufficient to support the Petitioner's convictions for attempted aggravated burglary and aggravated burglary;
2. Whether the indictment for attempted aggravated burglary was defective;
3. Whether the trial court erred in holding that a box cutter was a deadly weapon under the statute;
4. Whether the trial court erred in ordering consecutive sentencing;
5. Whether trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, for failing to object during the cross-examination of the Petitioner by the assistant district attorney;
6. Whether trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, for failing to investigate Petitioner's mental status at the time of the offenses;
7. Whether the trial court had jurisdiction to amend Petitioner's offender status for the judgment for his aggravated burglary conviction,
8. Whether the trial judge failed to properly explain all elements of the offenses; and
9. Whether the trial judge imposed an unconstitutional judgment on the Petitioner by sentencing him to the maximum time for each charge and running them consecutively.

## III. ANALYSIS OF THE MERITS

### A. Waiver and Procedural Default

Section 2254(b) states, in pertinent part:

(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process;  or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Thus, a habeas petitioner must first exhaust available state remedies before requesting relief under § 2254.  *E.g.*, *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987); *Rose v. Lundy*, 455 U.S. 509, 519 (1982); Rule 4, Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules").  A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state procedure.  28 U.S.C. § 2254(c); *Preiser v. Rodriguez*, 411 U.S. 475, 477, 489-90 (1973).

To exhaust his state remedies, a petitioner must have presented the very issue on which he seeks relief from the federal courts to the courts of the state that he claims is wrongfully confining him.  *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief."  *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).  "'[T]he substance of a federal habeas corpus claim must first be presented to the state courts.'"  *Id.* at 163 (quoting *Picard*, 404 U.S. at 278).  A habeas petitioner does not satisfy the exhaustion requirement of § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief."  *Id.*

Conversely, "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id.* When a petitioner raises different factual issues under the same legal theory, he is required to present each factual claim to the highest state court in order to exhaust his state remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987). He has not exhausted his state remedies if he has merely presented a particular legal theory to the courts without presenting each factual claim. *Pillette*, 824 F.2d at 497-98. The claims must be presented to the state courts as a matter of federal law. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

The state court decision must rest primarily on federal law. *Coleman v. Thompson*, 501 U.S. 722, 734-35 (1991). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by this procedural default from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977). However, a federal claim may be properly exhausted even if the state-court decision does not explicitly address it; it is enough that the petitioner's brief squarely presents the issue. *Smith v. Digmon*, 434 U.S. 332 (1978) (per curiam); *see also Baldwin v. Reese*, 541 U.S. 27, 30-32 (2004) (a federal habeas claim is fairly presented to a state appellate court only if that claim appears in the petitioner's brief).

When a petitioner's claims have never been actually presented to the state courts but a state procedural rule prohibits the state court from extending further consideration to them, the claims are deemed technically exhausted and thus procedurally barred. *Coleman*, 501 U.S. at 731-32; *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Wainwright*, 433 U.S. at 87-88; *Rust*, 17 F.3d at 160.

A petitioner confronted with either variety of procedural default must show cause for the default and that he was prejudiced in order to obtain federal court review of his claim. *Teague*, 489 U.S. at 297-99; *Wainwright*, 433 U.S. at 87-88. Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. *Coleman*, 501 U.S. at 752-53; *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

A petitioner may avoid the procedural bar and the necessity of showing cause and prejudice by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.*

A state court determination that a claim has been previously determined does not bar federal review; rather, "it provides strong evidence that the claim has already been given strong consideration by the state courts and thus is ripe for federal adjudication." *Cone v. Bell*, 556 U.S. 449, 467 (2009). A federal court is required to scrutinize the application of state-court rules that are invoked to bar a federal court from reviewing a habeas petitioner's claim, *id.* at 1782 (citing

10

*Lee v. Kemna*, 534 U.S. 362, 375 (2002)), and, when a state court declines to find that a claim

has been waived by a petitioner's alleged failure to comply with a procedural rule, a federal court

ordinarily will not second-guess that decision, *id.*

      B.      Legal Standard for Merits Review

      The standard for reviewing a habeas petitioner's constitutional claims on the merits is

stated in § 2254(d). That section provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the United
> States;
>
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

This Court must determine whether the state court adjudications of the claims that were decided

on the merits were either "contrary to" or an "unreasonable application of" "clearly established"

federal law as determined by the United States Supreme Court. This Court must also consider

whether the state court decision with respect to each issue was based on an unreasonable

determination of the facts in light of the evidence presented in the state proceeding.

      The United States Supreme Court has issued a series of decisions setting forth the

standards for applying § 2254(d)(1).[1] In *Williams v. Taylor*, 529 U.S. 362, 404 (2000), the

Supreme Court emphasized that the "contrary to" and "unreasonable application of" clauses

---

[1] By contrast, there is little case law addressing the standards for applying § 2254(d)(2).

should be accorded independent meaning. A state-court decision may be found to violate the "contrary to" clause under two circumstances:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

> Accordingly, in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's "contrary to" clause.

*Id.* at 405-06 (citations omitted); *see also Price v. Vincent*, 538 U.S. 634, 640 (2003) (same); *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (same); *Bell v. Cone*, 535 U.S. 685, 694 (2002) (same).[2] The Supreme Court has emphasized the narrow scope of the "contrary to" clause, explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see also id.* at 407 ("If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity.").

A federal court may grant the writ under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Cone*, 535 U.S. at 694;

---

[2]The Supreme Court has emphasized that this standard "does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

see also *Andrade*, 538 U.S. at 75; *Williams*, 529 U.S. at 409.[3]  "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410.[4]  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.[5]

Section 2254(d)(1) refers to "clearly established" federal law, "as determined by the Supreme Court of the United States."  This provision "expressly limits the source of law to cases

---

[3]Although the Supreme Court in *Williams* recognized, in dicta, the possibility that a state-court decision could be found to violate the "unreasonable application" clause when "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," 529 U.S. at 407, the Court expressed a concern that "the classification does have some problems of precision," *id.* at 408.  The *Williams* Court concluded that it was not necessary "to decide how such 'extension of legal principle' cases should be treated under § 2254(d)(1)," *id.* at 408-09, and, to date, the Supreme Court has not had occasion to revisit the issue.  *See Williams v. Coyle*, 260 F.3d 684, 699-700 (6th Cir. 2001).

[4]*See also Andrade*, 538 U.S. at 75 (lower court erred by equating "objectively unreasonable" with "clear error"; "These two standards, however, are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) (holding that the lower court "did not observe this distinction [between an incorrect and an unreasonable application of federal law], but ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)."); *Cone*, 535 U.S. at 698-99 ("For [a habeas petitioner] to succeed . . . , he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly."); *Williams*, 529 U.S. at 411 ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

[5]*See also Brown v. Payton*, 544 U.S. 133, 147 (2005) ("Even were we to assume the '"relevant state-court decision applied clearly established federal law erroneously or incorrectly,"' . . . there is no basis for further concluding that the application of our precedents was 'objectively unreasonable.'") (citations omitted).

decided by the United States Supreme Court."  *Harris v. Stovall*, 212 F.3d 940, 944 (6th Cir.

2000).  As the Sixth Circuit has explained:

> This provision marks a significant change from the previous language by referring only
> to law determined by the Supreme Court.  A district court or court of appeals no longer
> can look to lower federal court decisions in deciding whether the state decision is
> contrary to, or an unreasonable application of, clearly established federal law.

*Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1999) (citing 17A C. WRIGHT, A. MILLER & E.

COOPER, FEDERAL PRACTICE AND PROCEDURE § 4261.1 (2d ed. Supp. 1998)); *see also Harris*,

212 F.3d at 944 ("It was error for the district court to rely on authority other than that of the

Supreme Court of the United States in its analysis under § 2254(d).").  Finally, in determining

whether a rule is "clearly established," a habeas court is entitled to rely on "the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

decision."  *Williams*, 529 U.S. at 412.

There is almost no case law about the standards for applying § 2254(d)(2), which permits

federal courts to grant writs of habeas corpus where the state court's adjudication of a

petitioner's claim "resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  In a decision applying this

standard, the Supreme Court observed that § 2254(d)(2) must be read in conjunction with

§ 2254(e)(1), which provides that a state court's factual determinations are presumed to be

correct unless rebutted by clear and convincing evidence.  *Miller-El v. Dretke*, 545 U.S. 231, 240

(2005).[6]  It appears that the Supreme Court has, in effect, incorporated the standards applicable

to the "unreasonable application" prong of § 2254(d)(1).  *Rice*, 546 U.S. at 341-42 ("Reasonable

---

[6]*But cf. Wood*, 558 U.S. at 293, 300-02 (declining to address the relationship between
§§ 2254(d)(2) and 2254(e)(1)); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006)  (recognizing that it
is unsettled whether there are some factual disputes where § 2254(e)(1) is inapplicable).

14

minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."); *see also Wood v. Allen*, 130 S. Ct. 841, 850-51 (2010). That is consistent with the approach taken by the Sixth Circuit, which stated in an unpublished decision, that

> a federal habeas court may not grant habeas relief under § 2254(d)(2) simply because the court disagrees with a state trial court's factual determination. Such relief may only be granted if the state court's factual determination was "objectively unreasonable" in light of the evidence presented in the state court proceedings. Moreover . . . , the state court's factual determinations are entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence.

*Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002) (citing § 2254(e)(1));[7] *see also Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007); *Stanley v. Lazaroff*, No. 01-4340, 2003 WL 22290187, at *9 (6th Cir. Oct. 3, 2003); *Jackson v. Holland*, No. 01-5720, 2003 WL 22000285, at *7 (6th Cir. Aug. 21, 2003) ("Though the Supreme Court has not yet interpreted the 'unreasonable determination' clause of § 2254(d)(2), based upon the reasoning in *Williams*, it appears that a court may grant the writ if the state court's decision is based on an objectively unreasonable determination of the facts in light of the evidence presented during the state court proceeding.") (citing *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000)).

IV. ANALYSIS OF PETITIONER'S CLAIMS

A. The Sufficiency of the Evidence (Claim 1)

In his first claim for relief, Clark argues that the evidence is insufficient to support his convictions for attempted aggravated burglary and aggravated burglary. (D.E. 1 at 14.)

---

[7]*See also Sumner v. Mata*, 449 U.S. 539, 546-47 (1981) (applying presumption of correctness to factual determinations of state appellate courts).

Petitioner challenged the sufficiency of the evidence supporting his convictions on direct appeal

(D.E. 12-11 at 2), and the TCCA rejected these issues on the merits:

> Where sufficiency of the convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

> All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> > This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

> *Bolin v. State*, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

> A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *See State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

> A person commits criminal attempt who, acting with the culpability otherwise required for the offense:

> > (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a) (2006).

As relevant here, aggravated burglary is the entry of a habitation without the effective consent of a property owner with intent to commit a felony, theft, or assault. *See* Tenn. Code Ann. §§ 39-14-402(a)(1), -403(a) (2006). A habitation is any structure designed or adapted for the overnight accommodation of persons. *Id.* § 39-14-401(1)(A). The intent required for the offense of burglary may be established by circumstantial evidence. *Bollin v. State*, 486 S.W.2d 293, 296 (Tenn. Crim. App. 1972). "In the absence of an 'acceptable excuse,' a jury may reasonably and legitimately infer that by breaking and entering a building containing valuable property, a defendant intends to commit theft." *State v. Ingram*, 986 S.W.2d 598, 600 (Tenn. Crim. App. 1998) (citations omitted).

The defendant argues that the evidence was insufficient to support his convictions for attempted aggravated burglary and aggravated burglary because the State offered no proof that he intended to commit a theft when he broke the windows in the victims' houses. Viewed in the light most favorable to the State, the proof at trial established that the defendant broke a window in the front of Steve Russell's house. Russell's curtains were draped over his desk as though someone had reached inside the house. The defendant also broke two windows in Joseph Martinez'[s] house. When Martinez encountered the defendant, part of his upper body was through the bedroom window, and he was bleeding and holding a box cutter. As we have set out, in the absence of an "acceptable excuse," a jury may infer the intent to commit theft from the breaking and entering of a building containing valuable property. As was its prerogative, the jury chose not to accredit the defendant's testimony that he was seeking assistance. The evidence was sufficient to support the defendant's convictions.

*Clark*, 2008 WL 3342992, at *5-6.

In *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), the Supreme Court held that in a challenge to a state criminal conviction brought under § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of

fact could have found proof beyond a reasonable doubt. This standard requires a federal district court to examine the evidence in the light most favorable to the State. *Id.* at 324, 326 ("a federal habeas corpus court faced with a record of conflicting facts that supports conflicting inferences must presume—even if it does not affirmatively appears in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").

In his petition, Clark argues that there was insufficient evidence of intent to commit a theft after the breaking of the windows of either house. The Petition does not refer to the standards for reviewing the merits of claims raised in petitions pursuant to § 2254 and, therefore, it is not possible to tell whether he contends that the decision of the TCCA was contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1). This is "a run-of-the-mill state-court decision applying the correct legal rule from [*Jackson v. Virginia*] to the facts of a prisoner's case," and therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406.

It is not clear whether Clark contends that the decision of the TCCA was an unreasonable application of *Jackson*. Although it is clear that he disagrees with the state-court decision, the Petition does not analyze the particular deficiencies in the ruling in light of *Jackson*. Clark fails to make any effort to demonstrate that the state-court decision was objectively unreasonable, rather than merely incorrect. *See id.*, 529 U.S. at 410. The TCCA applied the holding of *Jackson v. Virginia*, the correct legal rule, to the evidence presented at trial—viewed in the light most favorable to the State—which the jury chose to credit. *See supra* pp. 16-17. Clark contends that the evidence was lacking to convict him for attempted aggravated burglary and aggravated burglary, but the TCCA directly addressed both of these claims and found them to be meritless. *Id.* The trial court instructed the jury on the elements of attempt and aggravated

18

burglary, as well as correctly explained that "[i]n the absence of an 'acceptable excuse,' a jury may reasonably and legitimately infer that by breaking and entering a building containing valuable property, a defendant intends to commit theft." *Id.* Clark chose to take the stand to present his version of the night in question, but the jury rejected it and found him guilty. *Id.*

The facts recounted by the TCCA are supported by the record and are sufficient to show that Clark both attempted to commit aggravated burglary and committed aggravated burglary. The evidence was ample for the jury to conclude that Clark intended to commit a theft when he broke into both houses. This issue is without merit and is therefore DENIED.

## B.  The Sufficiency of the Indictment (Claim 2)

The inmate contends that the indictment for attempted aggravated burglary was defective because it failed to state an essential element of the offense. (D.E. 1 at 14.) The State argues this claim is barred by procedural default as the TCCA decided this issue on an adequate and independent state ground. (D.E. 22 at 23.) The TCCA rejected this argument on direct appeal:

> An indictment or presentment must inform the accused of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In addition, Tennessee Code Annotated section 40-13-202 requires that an indictment "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment."

> An indictment that achieves its "overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." *State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000). Our supreme court has held that an indictment is sufficient to satisfy notice requirements if it "contains allegations that (1) enable the accused to know the accusation to which answer is required; (2) furnish the trial court an adequate basis for entry of a proper judgment; and (3) protect the accused from a subsequent prosecution for the same offense." *Id.* at 299 (citing *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997)).

> The challenged indictment reads:

19

THE GRAND JURORS of Madison County, Tennessee, duly empaneled and sworn, upon their oath, present that

**Tommy Lee Clark**

on or about June 23, 2006, in Madison County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly attempt to commit the criminal offense of Aggravated Burglary, by going to the residence of STEVE RUSSELL and attempting to enter the said residence by breaking the window glass, in violation of T.C.A. § 39-14-403 and T.C.A. § 39-12-101, all of which is against the peace and dignity of the State of Tennessee.

The defendant argues that the indictment is defective because it does not allege that he entered Russell's home with the intent to commit a theft. However, as the State correctly argues, the defendant has waived this argument by not presenting it before trial. At any time while a case is pending, a court may hear a claim that the indictment fails to show jurisdiction in the court or charge an offense. Tenn. R. Crim. P. 12(b)(2)(B). All other objections to the sufficiency of the indictment must be made prior to trial, or the issue will be deemed waived. Tenn. R. Crim. P. 12(b)(2)(B), (f)(1); *State v. Kennedy*, 649 S.W.2d 275, 279 (Tenn. Crim. App. 1982), *overruled on other grounds by State v. Holt*, 691 S.W.2d 520, 522 (Tenn. 1984). The defendant did not challenge the indictment prior to trial and does not allege that it fails to show jurisdiction or charge an offense. Accordingly, this issue is waived.

Even if we were to reach the merits of the issue, the defendant would not be entitled to relief. The indictment lists the date and place of the offense, the act the defendant is alleged to have committed, and the statutes the defendant is alleged to have violated. This was sufficient to inform the defendant of the statute he was accused of violating, allow the entry of a proper judgment, and protect the defendant from double jeopardy. This assignment is without merit.

*Clark*, 2008 WL 3342992, at *6-7.

If a state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by procedural default from seeking federal habeas review. *See supra* p. 8-10. The Sixth Circuit applies a four-part test to determine whether a habeas claim has been procedurally defaulted due to a petitioner's failure to comply with a state procedural rule:

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . .

Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1985) (citations & footnote omitted); *see also Van Hook v. Bobby*, 661 F.3d 264, 269 (6th Cir. 2011), *cert. denied sub. nom. Van Hook v. Robinson*, 132 S. Ct. 1917 (2012); *Clinkscale v. Carter*, 375 F.3d 430, 440–41 (6th Cir. 2004).

Clark did not challenge the indictment prior to trial nor did he allege in his direct appeal that the trial court failed to show jurisdiction or charge an offense. The TCCA relied on Tennessee Rules of Criminal Procedure 12(b)(2)(B) and 12(f)(1) in rejecting Petitioner's argument. *Clark*, 2008 WL 3342992, at *6. The version of Tennessee Rules of Criminal Procedure 12(b)(2)(B) and (f)(1) in effect at the time of Petitioner's direct appeal provided as follows:

(b) Pretrial Motions.

(2) Motions That Must Be Made Before Trial. The following must be raised before trial:

(B) a motion alleging a defect in the indictment, presentment, or information—but at any time while the case is pending, the court may hear a claim that the indictment, presentment, or information fails to show jurisdiction in the court or to charge an offense;

(f) Effect of Failure to Raise Defenses or Objections. Unless the court grants relief for good cause, a party waives any defense, objection, or request by failing to comply with:

(1) rules requiring such matters to be raised pretrial. . . .

Thus, Tennessee has a procedural rule that requires alleged defects in the indictment to be raised before trial. Petitioner failed to comply with that procedural rule as he did not raise the issue pretrial. Therefore, the first *Maupin* factor has been satisfied. The second factor also has been satisfied, as the TCCA enforced the procedural bar. *Clark*, 2008 WL 3342992, at *6-7.

The third requirement, that the state procedural rule must be an "adequate and independent" state ground, focuses on "the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Maupin*, 785 F.2d at 138; *see also Henry v. Mississippi*, 379 U.S. 443, 447–48 (1965) ("[A] litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest. In every case we must inquire whether the enforcement of a procedural forfeiture serves such a state interest. If it does not, the state procedural rule ought not be permitted to bar vindication of important federal rights."). The adequacy of a state procedural rule "is itself a federal question." *Lee v. Kemna*, 534 U.S. 362, 375 (2002). "Ordinarily, violation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim." *Id.* at 376. The Supreme Court has held a procedural ground to be inadequate in "exceptional cases," such as where the application of a "generally sound rule" has been deemed "exorbitant." *Id.*; *see also Walker v. Martin*, 562 U.S. 307, 309 (2011) (a state procedural rule may be inadequate when a state court "exercised its discretion in a surprising or unfair manner").

A review of Tennessee cases demonstrates that the Tennessee procedural rules relied upon by the TCCA in this case are firmly established. *See, e.g.*, *Aden v. Jones*, No. W2014-01977-CCA-3-HC, 2015 WL 3881247, at *2 (Tenn. Crim. App. June 24, 2015); *State v. Smith*, No. M2014-01172-CCA-R3-CD, 2015 WL 3550106, at *3 (Tenn. Crim. App. Apr. 21, 2015); *State v. Blankenship*, No. E2011-01550-CCA-R3-CD, 2012 WL 5356288, at *7 (Tenn. Crim. App. Oct. 31, 2012). Accordingly, the third *Maupin* factor has been satisfied.

The fourth *Maupin* factor has also been met. The TCCA determined that even if it were to reach the merits of the issue, the indictment would not have been found to be defective. *Clark*, 2008 WL 3342992, at *7. In this proceeding, Petitioner failed to acknowledge the default of this issue and made no attempt to establish cause or prejudice. (D.E. 1 at 14.) This issue is barred by procedural default due to Clark's failure to object to the indictment pretrial and is therefore DENIED.

C. Trial Court's Jury Instruction (Claim 3)

Petitioner contends that the trial court erred in holding that a box cutter is a deadly weapon within the confines of the applicable statute. (D.E. 1 at 15.) The State argues this issue is barred by procedural default, fails to state a cognizable claim for habeas relief, and is meritless. (D.E. 22 at 23.) On direct appeal, the TCCA rejected Clark's argument:

Tennessee Code Annotated § 39-17-1307 states:

(a)(1) A person commits an offense who carries with the intent to go armed a firearm, a knife with a blade length exceeding four inches (4″), or a club.

(2)(A) The first violation of subdivision (a)(1) is a Class C misdemeanor, and, in addition to possible imprisonment as provided by law, may be punished by a fine not to exceed five hundred dollars ($500).

(B) A second or subsequent violation of subdivision (a)(1) is a Class B misdemeanor.

23

(C) A violation of subdivision (a)(1) is a Class A misdemeanor if the person's carrying of a handgun occurred at a place open to the public where one (1) or more persons were present.

(b)(1) A person commits an offense who possesses a handgun and:

(A) Has been convicted of a felony involving the use or attempted use of force, violence or a deadly weapon; or

(B) Has been convicted of a felony drug offense.

(2) An offense under subdivision (b)(1) is a Class E felony.

(c)(1) A person commits an offense who possesses a deadly weapon other than a firearm with the intent to employ it during the commission of, attempt to commit, or escape from a dangerous offense as defined in § 39-17-1324.

(2) A person commits an offense who possesses any deadly weapon with the intent to employ it during the commission of, attempt to commit, or escape from any offense not defined as a dangerous offense by § 39-17-1324.

(3) A violation of this subsection (c) is a Class E felony.

As we understand, the defendant argues that he was convicted of violating section 39-17-1307(a)(1). He contends that the trial court improperly instructed the jury that "a deadly weapon means a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." He asserts that the trial court instead should have instructed the jury that the box cutter's blade length must exceed four inches for it to be considered a deadly weapon.

The State correctly argues, however, that the defendant was convicted of violating section 39-17-1307(c)(1). The judgment form states that the offense of conviction is "POSS WEAPON W/INTENT TO EMPLOY IN OFFENSE" and the statute violated is "39-17-1307(C)." As such, the trial court's instruction to the jury regarding the definition of the phrase "deadly weapon" was correct. *See* Tenn. Code Ann. § 39-11-106(a)(5) (2006). Moreover, this court has held that a box cutter is a "deadly weapon" as that term is defined in section 39-11-106. *State v. John Liddell*, No. W2005-00780-CCA-R3-CD, 2006 WL 2872473, at *4 (Tenn. Crim. App. Oct. 9, 2006). We find no error in the trial court's instruction to the jury.

*Clark*, 2008 WL 3342992, at *7.

Although Clark argues that allowing the conviction of Count Three to stand violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, the actual basis of his argument is that a box cutter does not meet the statutory criteria. Error in the application of state law is not an appropriate issue in a federal habeas proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). Because this issue involves the interpretation of a Tennessee statute, this issue is not cognizable in a § 2254 petition. Therefore, Claim 3 is DENIED.

D. Trial Court's Consecutive Sentencing Decision (Claim 4)

Petitioner insists that the trial court's order of consecutive sentencing is a violation of the federal prohibition on cruel and unusual punishment. (D.E. 1 at 16.) The State contends that this issue is barred by procedural default, fails to state a cognizable claim, and is meritless. (D.E. 22 at 26.) On direct appeal, Clark challenged the decision of imposing a consecutive sentence, which the TCCA rejected:

> When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); *State v. Bonestel*, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). Enhancement factors may be considered only if they are "appropriate for the offense," and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114 (2003).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; *Ashby*, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A trial court, in its sound discretion, may impose consecutive sentencing in accordance with Tennessee Code Annotated section 40-35-115, if it finds any of the following criteria:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person as declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the

time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (2006). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.

The defendant argues that the trial court erred in imposing consecutive sentencing because "[t]his sentence is extreme given the facts of this case." He asserts that because he broke two windows, caused less than $200 worth of damage, and did not take any property or injure the victims, consecutive sentencing was inappropriate. The State responds that the record supports the imposition of consecutive sentencing.

In ordering that the defendant's sentences be served consecutively, the trial court noted the "repeated conduct of this [d]efendant and his failure to conform to the laws" and stated "he keeps coming back and coming back, the record speaks for itself." We understand this as a finding that the defendant is an offender whose record of criminal activity is extensive. *See* Tenn. Code Ann. § 40-35-115(b)(2). The record supports this finding. The defendant's presentence report reflects nine felony and twenty-eight misdemeanor convictions, including four prior convictions for burglary. At the sentencing hearing, the State introduced certified copies of the judgments of conviction for thirty-two of these offenses. This proof was sufficient to justify the imposition of consecutive sentencing.

*Clark*, 2008 WL 3342992, at *8-9.

In his brief on direct appeal, Clark argued that the consecutive sentencing was improper because it failed to meet the state statutory criteria; he did not employ any federal constitutional analysis or arguments. (D.E. 12-9 at 20-21.) Typically, the exhaustion requirement is fulfilled after a petitioner fairly presents all of his claims to the highest court in the state in which he was convicted, thus giving the state a full and fair opportunity to rule on the claims before he seeks relief in federal court. *O'Sullivan*, 526 U.S. at 842; *Wilson v. Mitchell*, 498 F.3d 491, 498 (6th Cir. 2007). Both the factual and legal basis for the claim must have been presented to the state courts in order to be considered "fully presented." *Fulcher v. Motley*, 444 F.3d 791, 798 (6th

Cir. 2006). The petitioner must present to the federal court "the same claim under the same theory" that he presented to the state courts. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009). The Sixth Circuit has identified four actions that a petitioner can take that are deemed to be significant in determining whether he has properly presented that claim:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (internal citations omitted); *see also William v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006); *Blackmon v. Broker*, 394 F.3d 399, 400 (6th Cir. 2004). If a petitioner specifically cites to constitutional provisions, he has fairly presented the claim even if he relies upon the wrong cases. *Fulcher*, 444 F.3d at 798.

In the instant matter, the inmate failed to exhaust his remedies because he did not fully present his claims in state court. On direct appeal, Petitioner's argument against a consecutive sentence was based solely on state legal grounds. Clark made no federal claim, no federal argument, and cited no federal cases. As such, he did not fully present this claim to the state courts and did not exhaust his remedies. Additionally, Clark has not made a showing of cause and prejudice as to why this claim should not be denied. Therefore, because Petitioner did not fully exhaust his remedies on Claim 4, the issue is DENIED.

E. Ineffective Assistance of Counsel (Claims 5 and 6)

Petitioner contends that trial counsel was ineffective for both failing to object to a statement made by the assistant district attorney during the cross examination of Petitioner and for failing to investigate his mental status at the time of the offense. (D.E. 1 at 16-17.) The State argues both of these claims are barred by procedural default. (D.E. 22 at 28-29.) In appealing the

denial of his post-conviction relief, Clark argued these two issues in his brief to the TCCA.

*Clark v. State*, No. 2009-01613-CCA-R3-PC, 2010 WL 1610532, at *2 (Tenn. Crim. App. Apr. 21, 2010). The court affirmed the denial of his petition for post-conviction relief, holding:

> In a timely appeal to this court, the petitioner argues that trial counsel provided ineffective assistance by failing to object to the prosecutor's "highly prejudicial statements with no factual or evidentiary foundation" and by failing to investigate or evaluate the petitioner's mental status at the time of the offenses. The State responds by arguing that the petitioner has waived appellate review by his failure to include his claims in his post-conviction petition. The State further argues that the petitioner failed to meet his burden of showing that counsel was deficient in his representation or that he was prejudiced as a result. We agree with the State.

> "Ineffective assistance of counsel is generally a single ground for relief under the post-conviction statute" although it "may be proved by multiple acts or omissions." *Thompson v. State*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997) (citations and internal quotation marks omitted). "Thus, all factual allegations must be presented in one claim." *Erika Louise Bunkley Patrick v. State*, No. W2004–02217–CCA–R3–PC, 2006 WL 211824, at *10 (Tenn. Crim. App. Jan. 24, 2006) (citing Tenn. Code Ann. § 40-30-106(d)). A petitioner may not, therefore, "relitigate a claim of ineffective assistance of counsel 'by presenting new and different factual allegations' on appeal." *Id.* (quoting *Thompson*, 958 S.W.2d at 161). Because the petitioner's issues on appeal involve completely new and different allegations from those contained in his *pro se* or amended petitions, we agree with the State that the issues are waived.

> We further agree with the State that, even if not waived, the petitioner would not be entitled to post-conviction relief on the basis of these claims. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f) (2006). To establish a claim of ineffective assistance of counsel, he has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).

> The petitioner has not met his burden with respect to either of the allegations of ineffective assistance raised in this appeal. His vague testimony about being disabled due to a stroke that affected his hand does not establish either that counsel was deficient for failing to request a mental evaluation or that the petitioner was prejudiced as a result. Similarly, the petitioner has also failed to establish either deficient performance or resulting prejudice to his case due to counsel's failure to object to the prosecutor's questions about his drug use, an issue that was first raised by a witness that the petitioner insisted that counsel call in his defense.

*Id.* at *2-3.

If a state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by procedural default from seeking federal habeas review. *See supra* p. 8-10, 20-23. Clark made these two ineffective assistance of counsel claims for the first time in his appeal of the denial of his post-conviction relief to the TCCA. The court relied on established law, which holds that "all factual allegations must be presented in one claim," and a petitioner may not then "relitigate a claim of ineffective assistance of counsel 'by presenting new and different factual allegations' on appeal." *Erika Louise Bunkley Patrick*, 2006 WL 211824, at *10. Thus, Tennessee has a procedural requirement that requires all allegations of ineffective assistance of counsel to be presented in the original petition for post-conviction relief to the trial court; failure to do so will bar a petitioner from raising the issue(s) on appeal. Therefore, the first *Maupin* factor has been satisfied. The second *Maupin* factor has also been satisfied, as the TCCA enforced the procedural bar. *Clark*, 2010 WL 1610532, at *2-3.

A review of Tennessee cases demonstrates that the Tennessee procedural rule relied on by the TCCA in this case is firmly established. *See*, *e.g.*, *Porreca v. State*, No. W2013-02443-CCA-R3-PC, 2015 WL 128037, at *1 (Tenn. Crim. App. Jan. 8, 2015), *perm. app. denied* (Tenn. May 18, 2015); *Patrick v. State*, No. W2004-02217-CCA-R3-PC, 2006 WL 211824, at *10 (Tenn. Crim. App. Jan. 24, 2006); *Roger Clayton Davis v. State*, No. 03C01-9908-CR-00076, 2000 WL 21307, at *3 (Tenn. Crim. App. Jan. 14, 2000), *perm. app. denied* (Tenn. Sept. 5, 2000); *Thompson*, 958 S.W.2d at 161. Therefore, the third *Maupin* factor has been satisfied.

The fourth *Maupin* factor has also been met. The TCCA determined that even had Clark not waived the issues, he would not be entitled to post-conviction relief. *Clark*, 2010 WL

1610532, at *3. The court found that Petitioner failed to carry his burden of proving ineffective assistance of counsel by clear and convincing evidence on both issues of deficient performance and prejudice. *Id.* In this proceeding, Clark failed to acknowledge the default of this issue and made no attempt to establish cause or prejudice. Thus, Claims 5 and 6 are barred by procedural default and are DENIED.

F. Trial Court's Amendment of the Judgement for the Aggravated Burglary Conviction (Claim 7)

Petitioner argues that when the trial court amended his offender status for the judgment on his aggravated burglary conviction, thus increasing the original sentence, the amended judgment was void because the court lacked jurisdiction. (D.E. 1 at 18.) The State contends that Clark fails to state a cognizable basis for habeas relief. (D.E. 22 at 31.) Error in the application of state law is not an appropriate issue in a federal habeas proceeding. *Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Pulley*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). Because this issue is premised on a state jurisdictional issue, it is not cognizable in a § 2254 petition. Therefore, Claim 7 is DENIED.

G. Dismissal of Issue 8 and 9 from Petitioner's State Court Writ of Certiorari (Claims 8 and 9)

Petitioner contends that the denial of his writ of certiorari that he filed in the Circuit Court for Madison County, Tennessee, in which he contended Claims 8 and 9 of his habeas petition, violated the Due Process Clause. (D.E. 15 at 3.) The State argues that these claims are barred by procedural default, fail to state a cognizable basis for relief, and are meritless. (D.E. 22 at 32-33.) The TCCA affirmed the denial of the writ of certiorari, reasoning:

On December 12, 2011, the Appellant filed a petition for writ of certiorari in the same court where he was originally tried and convicted of the offenses. The Appellant argued that at trial, the trial court failed to familiarize itself with the facts of the case and failed to instruct the jury properly regarding the elements of the offenses for which he was charged. On December 16, 2011, the trial court entered an order denying the petition. On April 18, 2012, the Appellant filed this notice of appeal.

The Appellant failed to file a notice of appeal within thirty days after the date of entry of the trial court's order as required in Rule 4(a) of the Tennessee Rules of Appellate Procedure. In criminal cases, however, the notice of appeal "is not jurisdictional and the filing of such document may be waived in the interest of justice." T.R.A.P. 4(a). In determining whether [to] the grant waiver of an untimely notice of appeal, this Court shall consider "the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case." *John R. Green v. State*, No. W2011-01637-CCA-R3-PC, 2012 Tenn. Crim. App. LEXIS 416, at *14 (Tenn. Crim. App., at Jackson, June 19, 2012) (citations omitted).

The Appellant contends that his notice of appeal was untimely because he did not receive notice of the trial court's December 16, 2011 order until April 13, 2012. Based upon our review of the nature of the issues for review, however, we conclude that waiver of the untimely notice of appeal is not warranted. The Appellant's claim that the trial court erred in denying his petition for writ of certiorari is without merit. A writ of certiorari may only be granted when an inferior tribunal has exceeded its jurisdiction or acted illegally. T.C.A. § 27-8-101. The Appellant did not file a petition in a superior court but applied to the Madison County Circuit Court to review a judgment it had previously issued. The Appellant may not invoke a writ of certiorari to secure the trial court's review of its own judgment. *See Mack Transou v. State*, No. W2010-01378-CCA-R3-CO, 2011 Tenn. Crim. App. LEXIS 393, at *8 (Tenn. Crim. App., at Jackson, June 1, 2011), *perm. app. denied* (Tenn. Aug. 25, 2011); *State v. John H. Parker*, No. W2004-00911-CCA-R3-CO- 2005 Tenn. Crim. App. LEXIS 345, at *10 (Tenn. Crim. App., at Jackson, Apr. 13, 2005), *perm. app. denied* (Tenn. Oct. 3, 2005).

We conclude that the interest of justice does not support a waiver of the thirty-day time limit for filing a notice of appeal. IT IS, THEREFORE, ORDERED that the appeal is DISMISSED.

*Clark*, W2012-00773-CCA-R3-CO, at *1-2.

If a state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner ordinarily is barred by procedural default from seeking federal habeas review. *See supra* p. 8-10, 20-23, 30-31. Clark filed a writ of certiorari in an inappropriate court—namely

the court that tried and sentenced him—and allowed the proper time to appeal lapse. An appellant has thirty days to file notice of appeal after the date of entry of the trial court's order. Tenn. R. App. P. 4(a). The version Rule of 4(a) in effect at the time of Petitioner's writ of certiorari provided as follows:

> **(a) Generally.** In an appeal as of right to the Supreme Court, Court of Appeals or Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the filing of such document may be waived in the interest of justice. The appropriate appellate court shall be the court that determines whether such a waiver is in the interest of justice. Any party may serve notice of entry of an appealable judgment in the manner provided in Rule 20 for the service of papers.

Thus, Tennessee has a procedural rule that requires notices of appeal to be filed within thirty days after the date of entry of the judgment. Clark failed to comply with that procedural rule because roughly four months passed before he filed a notice of his appeal. Therefore, the first *Maupin* factor has been satisfied. The second *Maupin* factor has also been met, as the court enforced the procedural bar. *Clark*, W2012-00773-CCA-R3-CO, at *1-2.

A review of Tennessee cases demonstrates that the Tennessee procedural rule relied on by the TCCA in this case is firmly established. *See, e.g.*, *Wilkerson v. State*, No. M2015-00420-CCA-R3-PC, 2015 WL 5240043, at *2 (Tenn. Crim. App. Sept. 8, 2015); *State v. Robinette*, No. E2014-01688-CCA-R3-CD, 2015 WL 4745065, at *2 (Tenn. Crim. App. Aug. 11, 2015); *State v. Willingham*, No. W2014-01539-CCA-R3-CD, 2015 WL 4381583, at *2 (Tenn. Crim. App. July 17, 2015); *State v. Sanders*, No. W2014-01455-CCA-R3-CD, 2015 WL 3990707, at *3-4 (Tenn. Crim. App. July 1, 2015); *State v. Torres*, No. M2013-00765-CCA-R3-CD, 2014 WL 4113112 , at *5-6 (Tenn. Crim. App. Aug. 21, 2014); *Simerly v. State*, No. E2012-00060-CCA-

R3-PC, 2013 WL 2326883, at *6 (Tenn. Crim. App. May 29, 2013). Therefore, the third *Maupin* factor has been satisfied.

The fourth *Maupin* factor has also been fulfilled. The TCCA determined that Clark failed to establish an interest of justice sufficient to excuse the waiver. In this proceeding, he did not acknowledge the default of this issue and made no attempt to establish cause or prejudice. This issue is barred by procedural default due to Petitioner's failure to properly appeal the issues. Thus, Claims 8 and 9 are DENIED.

V. APPELLATE ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Section 2254 Rules. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may be issued only if the petitioner has made a substantial showing of the denial of a constitutional right, and it must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2)-(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam). A COA does not require a showing that the appeal will succeed, *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011), however, courts

should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773 (quoting *Slack*, 537 U.S. at 337).

In this case, there can be no question that the claims in the Petition are noncognizable, barred by procedural default, and without merit. Because any appeal by Petitioner on the issues raised does not deserve attention, the Court DENIES a certificate of appealability.

In this case for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.[8]

VI. CONCLUSION

Based on the foregoing authorities and reasoning, the Court DENIES Clark's Petition for Habeas Corpus.


IT IS SO ORDERED this 28th day of September 2015.


s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[8]If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).